Case number 22-3078, United States of America v. Denzell Moore, appellant. Ms. Hernandez for the appellant, Mr. Goodhand for the appellate. Good morning. Good morning, Ms. Hernandez. Good morning, your honors. May it please the court, Carmen Hernandez, I represent Denzell Moore. I represented him below in a plea. The challenge in this case is that the district court erred procedurally and substantively in imposing a sentence at the very high end of the C plea. She ran the sentences consecutively and also varied upwardly. And the reasons she gave were not sufficient to support any kind of variance, particularly that strength. She also used the wrong standard in considering the arguments made by counsel. For example, with respect to the gun enhancement that was challenged below, the argument was that he had received a full five-level enhancement or the enhancement is applicable if a firearm was possessed or brandished. So when the argument when I made the argument that he only possessed the firearm and that's more benign than brandishing and therefore he should not receive the whole five levels, Judge Chudkin's response was the text says, the text covers possession. Well, that's not an appropriate answer because every request for a variance involves a request from what the text applies. In addition, when I objected back to the court in post-sentence, I objected to the fact that the court had not considered any of the mitigating circumstances. The court's response was, I considered it in calculating the guideline range. Again, that's not an appropriate response. They are separate concepts. You don't barter. I gave you, first of all, the only enhancement she did not apply was a reckless endangerment, which she had not applied in the guilty plea of the defendant who actually drove the vehicle. She had found that the driver had not engaged in reckless endangerment because he was only driving 25 miles an hour and for other reasons. And the reckless endangerment enhancement only involves the defendant's conduct. He was just a passenger. So again, she applied the wrong standard and you do not, it was a mixing of apples and oranges when you say, well, I gave consideration to the mitigating circumstances when I calculated the guidelines. That's not how it works. They're separating and distinct. And she recognized that these were mitigating circumstances. The young man, his first offense, he was only 18 years old. And the whole Roper analysis of lack of maturity, she recognized that he spent a lot of the time in DC jail, very lengthy period of time because of the negotiations that took place in the case at the worst possible time. Once it was during COVID, so people were locked in their, inmates were locked in their cells for termination by defense counsel, termination by US marshals, that the conditions at the DC jail were horrendous, that they met, fell below the standards. Yeah. You said that the district court considered the mitigators in calculating the guidelines and that that's erroneous, but am I wrong to read the record as her also going back and referencing the mitigators in the But she gave no, no credit. So she, she, she sentenced there was she considered, but then she gave no credit. Well, I'm not sure what it, what does consideration mean? Well, she referred to that. Yes. She was, she was aware of that. She was aware of that. And she was aware of the aggravators, which was the client shot two people during the murder. So my argument is that's not an aggravator. That is the offense. The offense is that if he hadn't shot two people, he wouldn't have been convicted and charged with that offense. So that, that to say, it's to say, well, you robbed a bank, therefore that's an aggravator. Well, that's, that's the offense robbing. What's the offensive conviction? First degree burglary, which requires what? Which requires entry into a, into a home does not require shooting two people. It does not require shooting two people, but the guideline that was a DC code violation and a date did take into account the aggravators, but she, she also, she doesn't just say aggravators. It was, she said it was so violent. It was so, and in her statement of reasons, she referred to it as extreme conduct. Nobody's defending the fact that you enter somebody's home and shoot somebody. That's not a good thing, but extreme conduct as used in the guidelines and it's used in the case law and as a basis for upward variance, it's usually means humiliating, you know, keeping somebody doing something heinous, that type of thing. These are two young adults living in the home and they were unarmed. They did not make any move to, to assault the defendant and the defendant's accomplice. So is it not fair to treat the shooting as an aggravator? Again, I don't think it is in the sense that that is part of parcel of the offensive conviction, but even if that was an aggravator, she's still sentenced at the high end of every, she sentenced at the high end of the Hobbs Act robbery, even though he, the government had referred to him as a lookout and yet, and he didn't brandish a firearm. He kept a firearm in his, he kept his hand in his pocket and it was assumed that he was indicating that he had a firearm. So there was nothing aggravating about a Hobbs Act robbery. I know this sounds, I'm not defending a robbery, but that's what the guideline range is. So he gets a full five levels, which he would have gotten if he had gone in there and brandished like the other guy who, who was the aggressor as the court indicated, he would have gotten the same guideline range. So, and then she, so she gave him high end, no reason to give him high end. She then ran the sentence consecutive. That's another sort of upward variance. She also noted that- You know more about this than I do, but the sentences, as I recall, she said she ran them consecutively because they were, it wasn't the same event with various charges. They were separated in time. So really, you know, in her view, this was somebody who had previously had run-ins with the law and had not, in her view, reformed or- This is a kid with, I said he had reformed and she and the judge did not take kindly to my, to my argument that he didn't brandish a firearm at the CVS. But that's, he was, this is a young man with, as a lot of young men that I represent court appointed cases, a young man with, but more so than most, I mean, he was five, six, epilepsy, still suffering from, from seizures at the DC jail during the most horrendous period of time. And so the last offense, he was there for more, for longer than we usually have defendants in pretrial. And DC jail is not set up to, to handle pretrial. So the last offense I would, I would say, you know, you put people in those circumstances, you're going to get problems and he's only five, six, so he's going to defend himself. When you say the last offense, you mean the use of the- Yes. Yes. And that issue, I don't think you're challenging this, but the, the C plea was, was based on what turned out in retrospect to be an not something that was challenged. That deal was the deal and, but, but it was a higher range, no? Correct. So welcome to the world of plea agreements. You take it or leave it. So yes, the, the, especially with the C plea, we're, we're pleading to arrange, we wanted to control the sentence the court was to impose. So the guideline calculation was lower. The guideline calculation that we believed when we entered into the plea agreement was- Higher than, than the accurate guidelines calculation. But that was, that was just resulted in a waiver unless you wanted to go back and renegotiate. Correct. And we were not going to get anything better. And it was, the problem was that the original plea agreement didn't take into account the consecutive sentences that had to be imposed. So the C plea number was wrong. So we went back and tried to redo the plea agreement. The charges were no different. The, this, the range that the government was prepared to provide, no matter what the guideline calculation was, that was the best range they were, they were willing to provide. And this went back and forth for many, that was the best plea offer we got. And, and he accepted it. So there's no challenge to that before us. And in fact, it was brought out before sentencing and the, and the, and Mr. Moore chose to waive it because we've been going, he didn't want to stay at the DC jail for any longer. Right. I appreciate that. The bottom line is that even if the judge, I'm sorry, even if the judge had discretion, if I could, even if the judge had discretion to do this, the reasons she gave were not sufficient. All right. We, we will give you a couple minutes for rebuttal. Okay. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the court, David Goodham for the United States. A couple of things I'd like to respond to. Your Honor has noted the wrinkle associated with the 11C1C plea and on the one hand and the ultimate range of 180. If the court looks at JA 150 to 151, you will see the district court very thoroughly addressed the discrepancy and ensured that everybody was on the same page and that there was no challenge. And then I'd go even a step further and I'd point out JA 186 when the sentence has been handed down and the court is having a colloquy with defense counsel, the court actually notes that the 11C1C originally, quote, it would have been 159 months and ask defense counsel, are you challenging, are you saying that I'm somehow violating the terms of the plea agreement? And again, at JA 186, the court says, I'm not saying you're violating, I think, the plea agreement. And, you know, that makes perfect sense. The plea agreement, of course, establishes that the guideline ranges are estimates, number one, and that the ultimate authority for a sentence within the 120 to 180 month range is ultimately up to the court. The court here did not go above the 180 month range. Very briefly with respect to the suggestion that the explanation was inadequate for the upward variance, I read this court's case law in Gaul to stand for just a couple of propositions. If you distill it to its essence, number one, you must relate the variance to this particular defendant. Well, certainly the court did that. At JA 178, the court, this is an armed burglary where two civilians were shot by Mr. Moore. Mr. Moore didn't have to shoot them, JA 171. Similarly, I see another fundamental tenet relating to upward variances under Gaul in this court's case law to stand for the proposition that the court should articulate a specific reason why the court has found the defendant's conduct, that particular defendant's conduct, more harmful or egregious than the typical case. And again, I think the court's comments adequately explained why this was more egregious. And in particular, I would point to JA 186. The court said this was a crime of unusual violence, which of course it was. He pled guilty just to first degree burglary, not the first degree burglary while armed. So the court had a full understanding he had a gun. She also had a full understanding that he shot two people while engaging in the burglary. The court also, I would again, in the context of conduct more harmful or egregious than the typical case, I would point to JA 178. The court says, quote, I've had three, four cases in which a defendant fired a weapon, only two in which someone was actually wounded. So again, the notion that this somehow was an effect of a gall in this court's cases in Brown and Steele case and Jackson is, I would suggest, belied by the record. Counsel, the district court also checked the box in the statement of reasons for extreme conduct. And I just want to understand the government's position. Are you actually defending that finding or are you just saying she otherwise explained the basis for the upward variance in the oral explanation or both? Your Honor, as Jackson articulates, it's not clear whether procedural rights are vested via a thirty five fifty three C2 statement of reasons. And and so even if you assume they're not, even if you assume there are procedural rights vested via that statement, then you look to see whether or not there was adequate explanation at the time of the oral sentencing. There was number one. Number two, again, to my mind, this is extreme conduct. As the court said, this was unusual violence in the context of burglary. When you shoot two persons with a gun, then you are in the context of extreme conduct. So I think we satisfy either if you look at thirty five fifty three C2 is providing vested rights and or if you don't and you look at just the oral sentencing. I'd be happy to address any additional questions that the court might have. We believe the court both procedurally and substantially adhered to the guidelines and this court's precedent and Supreme Court precedent. We'd ask that you affirm the sentence and the judgment. Thank you. Thank you. Thank you, Your Honor. Let me just address a few points the government made. It's true. The court said I've only handled two or three cases, but that's a function of the difference between superior court and federal court. There aren't superior court or street crimes where you get that kind of, you know, shootings and that type. You do not get that in federal court generally. So that's that doesn't make that doesn't make the offense more heinous than normal. The question the court asked whether she considered the mitigating circumstances. The response she gave when I brought up the fact that she hadn't considered was I did consider it in setting the guideline range. That's not consideration of mitigating. That's the wrong standard. I would submit to the court that same. And where do we look to see to appreciate? Is there any authority on that being the wrong standard? I don't. There are two separate and there are two separate things. The guidelines say calculate the guideline range one and to look at the 3553A factors. They don't say you can fold them in together and therefore the answer is. So the extreme conduct, this does not fit extreme conduct as that term is defined in the case law. And the the gun enhancement again, she did that same thing where she said she looked she used the wrong standard because she said the text covers it. And then lastly, she she every sentence she gave for each of the offenses, including the hopsack robbery for which was not extreme, was high end and then consecutive. So that even though she recognized looking at hundreds of cases, the average sentences for hopsack robberies, and even though she recognized that in every instance, the guideline, the sentences imposed, the average in hundreds of cases was below what she was imposing. So it was not only the fact that she upwardly varied, but that she ran them consecutively. And it's that's inconsistent with the guidelines, by the way. Oh, did you have one more point? No, that's it. He's a young man with a lot of mitigating circumstances. And he got no credit for the mitigating circumstances. Your Honor. Thank you very much. Thank you, Ms. Hernandez. You were appointed by the court to represent Mr. Moore in this case. And we very much thank you for your for your assistance. Thank you. The case is submitted.
judges: Pillard, Katsas, Garcia